**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Petronilo Alvarado, Jr., | CV 11-495-TUC-JGZ (JR) |
| Petitioner, | |
| | **REPORT AND** |
| vs. | **RECOMMENDATION** |
| Charles L. Ryan, et al., | |
| Respondents. | |

      Pending before the Court is Petronilo Alvarado, Jr.'s Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254.  In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation.  As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

1    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

2        Following a trial in his absence, a jury found Alvarado guilty of aggravated

3    assault, driving under the influence of an intoxicating liquor ("DUI"), driving with a

4    blood alcohol concentration ("BAC") of .10 or more, and multiple counts of criminal

5    damage and endangerment.   Ex. A, pp. 1-2.[1]   The trial court sentenced him to

6    concurrent, presumptive terms of imprisonment ranging from 1.5 to 7.5 years on four

7    of the nine counts and to time served on the remaining five.   Ex. A, p. 2.   Count 10

8    was omitted from the trial court's sentencing minute entry and therefore was not

9    addressed on appeal.   *Id*., p. 2 n. 1.

10        In its Memorandum Decision affirming Alvarado's convictions, the Arizona

11   Court of Appeals summarized the factual background as follows:[2]

12           the evidence at trial showed that Alvarado caused a five-vehicle
             accident when he failed to avoid a car that was stalled in the roadway
13           with its emergency lights flashing. The driver of a vehicle traveling in
             front of Alvarado just prior to the accident testified she had seen the
14           emergency lights from approximately one-half mile away. She changed
             lanes to pass the stalled vehicle, but Alvarado apparently did not. He
15           collided with the stalled vehicle, injuring its passenger and setting off a
             chain reaction of additional collisions. The injured passenger, who had
16           been standing outside the stalled vehicle just prior to impact, sustained
             cuts and scratches, and her ear was nearly severed. She testified she had
17           looked for approaching traffic when she got out of the vehicle but

18   _____

19   [1] Unless otherwise indicated, all exhibit references are to the exhibits attached to the
     Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. 9).
20

21   [2] The factual summary of the Arizona Court of Appeals is accorded a presumption of
     correctness. 28 U.S.C. § 2254(e)(1); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir.
22   2009) (citing *Hernandez v. Small*, 282 F.3d 1132, 1135 n. 1 (9th Cir. 2002)).

"wasn't worried" because the "few cars" she saw coming were "fairly far back."

A victim from a different vehicle testified that, prior to the accident, Alvarado had been driving "fast," "recklessly," and "cutting in and out of traffic." Another victim described Alvarado's vehicle as "speeding" and "darting in and out" of traffic. A deputy sheriff who spoke with Alvarado at the accident scene testified he had "smell[ed] a strong odor of intoxicants" and that Alvarado's speech had been slurred. Another deputy administered field sobriety tests and a horizontal gaze nystagmus (HGN) test to Alvarado at the scene. She testified Alvarado "had red, watery, bloodshot eyes"; "his face was flushed"; and "[h]e was stumbling, kind of staggering, swaying back and forth." Alvarado exhibited six out of six possible "cues of impairment" on the HGN test, and he performed badly on, or was unable to complete, the field sobriety tests. After he was arrested and read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Alvarado admitted having drunk "a couple shots of peppermint schnapps." Testing of blood drawn from Alvarado within two hours after the accident revealed an alcohol concentration of .149 percent.

Ex. A, p. 2.

After Alvarado's appointed appellate counsel could find no issues for appeal and filed a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967), Alvarado filed a *pro se* supplemental brief raising the following claims:

1.      The trial court erred when it failed to give the jury proper instructions and by failing to properly answer jury questions.

2.      The trial court erred in denying Alvarado's motion for a directed verdict on all counts because there was insufficient evidence to support his conviction.

3.      The trial court erred in denying Alvarado's motion in limine which sought to prevent the prosecution from introducing evidence that one of the victims was pregnant at the time of the collision.

3

1    Ex. C (Supplemental Brief), pp. 4-6.  By Memorandum Decision filed on May 9,

2    2008, the Court of Appeals denied Alvarado's appeal on the merits and affirmed the

3    convictions and sentences.  Ex. A.  Alvarado then sought review of the decision by

4    the Arizona Supreme Court, which denied the petition by letter dated October 21,

5    2008.  Ex. D.

6         On October 31, 2008, Alvarado initiated state post-conviction relief ("PCR")

7    proceedings with the filing of his pro se PCR petition.  Ex. E.  In his subsequently

8    filed memorandum, he argued that: (1) his trial counsel was ineffective for failing to

9    object to jury instructions and the trial court's answers to jury questions, failing to

10   object to witness testimony that was contradicted in police reports, and failing to

11   object to the sentence imposed based on *Blakely v. Washington*, 542 U.S. 296 (2004);

12   (2) the evidence was insufficient to support his convictions; (3) the trial court erred in

13   denying his motion in limine which sought to prevent the prosecution from

14   introducing evidence that one of the victims was pregnant at the time of the collision;

15   (4) the trial court and a juror improperly commented on his absence at trial; (5) his

16   post-collision statement was taken in violation of *Miranda*; (6) his trial counsel was

17   ineffective for failing to object to the court's responses to the jurors' questions and to

18   the illegal sentence imposed; and (7) his appellate counsel was ineffective for failing

19   to provide Alvarado with trial transcripts.  Ex. D (memorandum filed in support of

20   PCR petition) pp. 1-15; Ex. E (Trial Court Ruling), p. 2 (summary of PCR claims).

21   The trial court denied each of Alvarado's claims, rejecting the ineffective assistance

22

1   claims on the merits and finding the remaining claims precluded because they had

2   either been waived or were previously raised and denied on direct appeal.  Ex. F.

3          Alvarado filed a petition for review in the Arizona Court of Appeals, raising

4   claims that (1) the trial judge improperly commented on his absence during trial, (2)

5   the trial court and trial counsel erred in allowing his statement into evidence in

6   violation of *Miranda*, (3) the sentencing court erred in not acknowledging a claim of

7   ineffective assistance of trial counsel, (4) the sentencing court erred in not

8   acknowledging a claim of ineffective assistance of appellate counsel.  Ex. G, p. 2.

9   By Memorandum Decision filed on March 8, 2011, the Court of Appeals granted

10  review, but denied relief.  Ex. B.  The Court of Appeals noted that it would not

11  disturb the trial court's ruling absent an abuse of discretion.  *Id*., p. 2.  The court then

12  found that Alvarado arguably had raised his *Miranda* claim as an ineffective

13  assistance of counsel but, even if considered as such, found the claim meritless.  Ex.

14  B, pp. 4-5.  The court then found that Alvarado's claims of ineffectiveness related to

15  the pretrial investigation of the case and the failure to present mitigating evidence at

16  sentencing were not raised before the trial court and therefore would not be

17  addressed.  *Id*., pp. 4-5.  The court then addressed Alvarado's claim that his counsel

18  did not provide him the transcripts necessary to raise a claim that the trial court

19  improperly commented on his absence, and found it without merit.  *Id.*, pp. 5.

20  Alvarado sought review of the Court of Appeals' order by the Arizona Supreme

21  Court, and by letter dated June 15, 2011, the petition was denied.  Ex. H.

22

1    In the petition now before the Court, Alvarado raises six claims.  In Ground

2    One, he claims the trial court violated his rights to due process by improperly

3    instructing the jury on questions of law.  In Ground Two, he alleges that his due

4    process and fair trial rights were violated because the evidence against him was

5    insufficient to support his conviction.  In Ground Three, he contends that the trial

6    court violated his fair trial and due process rights by denying his motion in limine to

7    preclude the introduction into evidence of the victim's pregnancy.  In Ground Four,

8    he claims his lawyers were ineffective at trial and on appeal.  In Ground Five, he

9    alleges that his right against self-incrimination was violated by the introduction at

10   trial of his statement to police.  In Ground Six, he alleges that his right to due process

11   was violated because he is "actually innocent" of aggravated assault.  *Petition*, pp. 6-

12   9.

13   **II.    TIMELINESS**

14       The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

15   provides for a one year statute of limitations to file a petition for writ of habeas

16   corpus.  28 U.S.C. § 2244(d)(1).  Petitions filed beyond the one-year limitations

17   period must be dismissed.  *Id.* The statute provides in pertinent part that:

18       (1) A 1–year period of limitation shall apply to an application for a writ
         of habeas corpus by a person in custody pursuant to the judgment of a
19       State court. The limitation period shall run from the latest of-

20       (A) the date on which the judgment became final by the conclusion of
         direct review or the expiration of the time for seeking such review;
21
         (B) the date on which the impediment to filing an application created
22       by State action in violation of the Constitution or laws of the United

6

States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, in Alvarado's direct appeal proceedings, the Arizona Supreme Court denied review on October 21, 2008. Ex. D. Alvarado then had 90 days to petition the U.S. Supreme Court for review.  Sup.Ct.R. 13.  When he did not do so, his judgment became final on January 19, 2009.  *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

However, the limitations period was statutorily tolled because Alvarado's PCR was pending at the time.  Ex. E; *See* 28 U.S.C. § 2244(d)(2); Ariz.R.Crim.P. 32.2(a).  Alvarado's properly filed PCR petition remained pending until June 15, 2011, when the Arizona Supreme Court denied relief.  *See Lawrence v. Florida*¸ 549 U.S. 327, 332 (2007).  Because Alvarado filed the instant petition on August 11, 2011, well within a year of that date, it is timely.

7

1

2 **III.    LEGAL DISCUSSION**

3       Respondents argue that Grounds Three and Five are procedurally defaulted

4 and not subject to habeas review.  Additionally, Respondents contend that the state

5 court did not unreasonably apply clearly established federal law in rejecting the

6 remaining claims.

7       **A.    Exhaustion and Procedural Default**

8       A state prisoner must exhaust the available state remedies before a federal

9 court may consider the merits of his habeas corpus petition.  *See* 28 U.S.C. §

10 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999).  "[A] petitioner

11 fairly and fully presents a claim to the state court for purposes of satisfying the

12 exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through

13 the proper vehicle, and (3) by providing the proper factual and legal basis for the

14 claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations

15 omitted).

16       Exhaustion requires that a habeas petitioner present the substance of his

17 claims to the state courts in order to give them a "fair opportunity to act" upon these

18 claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  "To exhaust one's

19 state court remedies in Arizona, a petitioner must first raise the claim in a direct

20 appeal or collaterally attack his conviction in a petition for post-conviction relief

21 pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then

22

8

1    present his claims to the Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d

2    1008, 1010 (9th Cir. 1999).

3            Additionally, a state prisoner must not only present the claims to the proper

4    court, but must also present them fairly.  A claim has been "fairly presented" if the

5    petitioner has described the operative facts and federal legal theories on which the

6    claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44

7    F.3d 1396, 1403 (9th Cir. 1995).  "Our rule is that a state prisoner has not 'fairly

8    presented' (and thus exhausted) his federal claims in state court unless he specifically

9    indicated to that court that those claims were based on federal law."  *Lyons v.*

10   *Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d

11   904 (9th Cir. 2001).  A petitioner must alert the state court to the specific federal

12   constitutional guaranty upon which his claims are based, *Tamalini v. Stewart*, 249

13   F.3d 895, 898 (9th Cir. 2001), however, general appeals in state court to broad

14   constitutional principles, such as due process, equal protection, and the right to a fair

15   trial, are insufficient to establish fair presentation of a federal constitutional claim.

16   *Lyons*, 232 F.3d at 669.

17           Moreover, it is not enough that a petitioner presented to the state court all the

18   facts necessary to support an inadequately identified federal claim or that a

19   "somewhat similar" state law claim was raised.  *Baldwin v. Reese*, 541 U.S. 27, 28

20   (2004); *Shumway v. Payne*, 223 F.3d 982, 988 (9th Cir. 2000) (mere similarity

21   between a claim of state and federal error insufficient to establish exhaustion).

22   "Exhaustion demands more than drive-by citation, detached from any articulation of

9

1   an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th

2   Cir. 2005).

3       Claims may be procedurally defaulted and barred from federal habeas review

4   in a variety of circumstances.  If a state court expressly applied an adequate and

5   independent state procedural bar when the petitioner attempted to raise the claim in

6   state court review of the merits of the claim by a federal habeas court is barred.  *See*

7   *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).  Arizona courts have been consistent

8   in the application of the state's procedural default rules.  *Stewart v. Smith*, 536 U.S.

9   856, 860 (2002) (holding that Ariz.R.Cirm.P. 32.2(a) is an adequate and independent

10  procedural bar).  In Arizona, claims not previously presented to the state courts on

11  either direct appeal or collateral review are generally barred from federal review

12  because any attempt to return to state court to present them would be futile unless the

13  claims fit into a narrow range of exceptions.  *See Ariz.R.Crim.P.* 32.1(d)-(h), 32.2(a)

14  (precluding claims not raised on direct appeal or in prior post-conviction relief

15  petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty

16  days of trial court's decision).  Because these rules have been found to be

17  consistently and regularly followed, and because they are independent of federal law,

18  either their specific application to a claim by an Arizona court, or their operation to

19  preclude a return to state court to exhaust a claim, will procedurally bar subsequent

20  review of the merits of such a claim by a federal habeas court.  *Stewart*, 536 U.S. at

21  860; *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (Rule 32, Ariz.R.Crim.P.

22

10

1    is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and

2    preclusion rules strictly applied in postconviction proceedings).

3                    **1.    Ground Three**

4            In Ground Three, Alvarado claims that the trial court violated his rights to due

5    process and a fair trial by denying his *motion in limine* seeking to preclude evidence

6    that one of his victims was three months pregnant at the time of the collision.

7    *Petitioner's Memorandum*, pp. 6-7.   Respondents contend that the claim was not

8    properly exhausted because Petitioner did not fairly present the claim as based on

9    federal law.   *Answer*, p. 7.   In his opening brief on direct appeal, Alvarado, without

10   any reference to state or federal cases, or to his due process or fair trial rights,

11   asserted that the trial courts' denial of the motion "caused a violation of defendants[']

12   VI and XIV amendment rights under the United States Constitution."   Ex. C, p. 6.

13   As Respondents contend, the bald reference to the United States Constitution was

14   insufficient to inform the State court of the federal nature of the claim.

15           To properly exhaust this claim, Alvarado was required to make the federal

16   nature of the claim "explicit either by citing federal law or the decisions of the

17   federal courts."   *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *amended*, 247

18   F.3d 904 (9th Cir. 2001).   Also, because Alvarado was representing himself on

19   appeal, the citation to a state case applying the appropriate federal standard to the

20   claim would have sufficed.   *Peterson v. Lampert*, 319 F.3d 1153, 1158 (2003).   Here,

21   however, Alvarado did neither.   Under similar circumstances, the Ninth Circuit has

22   made it clear that "general appeals to broad constitutional principles, such as due

1    process, equal protection, and the right to a fair trial, are insufficient to establish

2    exhaustion."   *Hiivala v. Wood*, 195 F.3d 1098, 1106 (1999), *citing Gray v.*

3    *Netherland*, 518 U.S. 152, 162-63 (1996).  The Ninth Circuit has also required "more

4    than drive-by citation" to find a claim properly federalized.  *Castillo v. McFadden*,

5    399 F.3d 993, 1003 (9th Cir. 2005).  Under these standards, Alvarado did not present

6    his claims in a manner that would have sufficiently alerted the Arizona Court of

7    Appeals to the federal nature of his claim.   He referenced two constitutional

8    amendments, but did not identify any specific rights provided for in those

9    amendments that were violated by the trial court. Understandably, addressing the

10   claim on appeal, the Arizona Court of Appeals addressed the claim solely on state

11   evidentiary grounds.  Ex. A, pp. 6-7.  Accordingly, Alvarado did not exhaust his fair

12   trial or due process claims in the Arizona state courts.

13        Any attempt by Alvarado to return to state court to present Ground Three

14   would be futile because it would be procedurally barred pursuant to Arizona law. See

15   Ariz.R.Crim.P. 32. 1, and 32.2(a) and (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th

16   Cir. 2002) (a state post-conviction action is futile when it is time-barred); *State v.*

17   *Mata*, 916 P.2d 1035, 1048–53 (Ariz. 1996); Ariz.R.Crim.P. 32.1(a)(3) (relief is

18   precluded for claims waived at trial, on appeal, or in any previous collateral

19   proceeding); Ariz.R.Crim.P. 32.4(a) (notice of post-conviction review "must be filed

20   within ninety days after the entry of judgment and sentence or within thirty days after

21   the issuance of the order and mandate in the direct appeal, whichever is the later");

22   Ariz.R.Crim.P. 32.9 (petition for review must be filed within thirty days of trial

1   court's decision).   Because no state remedies are currently available, Alvarado's

2   claim is technically exhausted and procedurally barred. *See Coleman*, 501 U.S. at

3   732, and 735 n. 1.

4                    **2.      Ground Five**

5          Alvarado's fifth claim is that his statement that he had "a couple of shots of

6   peppermint Schnapps" was improperly admitted at trial in violation of his rights

7   under *Miranda v. Arizona*, 384 U.S. 436 (1966).  Alvarado did not raise this claim on

8   direct appeal.  Ex. C.  He attempted to raise it in his PCR proceedings, but the trial

9   court found the claim precluded under Ariz.R.Crim.P. 32.2(a).  Ex. F.  Reviewing the

10  trial court's decision, the Court of Appeals found that Alvarado had "couched this

11  claim in terms of ineffective assistance of trial counsel," and found the trial court

12  improperly found it precluded.  Ex. B, pp. 4-5.    However, the claim that Alvarado

13  raises in Ground Five of the instant petition is not based on ineffective assistance of

14  counsel.  Here, he argues that the admission of the statement was "plain error" and

15  makes no mention of ineffective assistance of counsel.  *Petitioner's Memorandum*,

16  pp. 8-9.  Thus, he has not presented the state court with the same claim he presents

17  here, *see Picard v. Connor*, 404 U.S. 270, 276 (1971), and it is not properly

18  exhausted.

19         As is the case in Ground Three, this claim is also procedurally barred under

20  Arizona law and can be addressed by this Court only it Alvarado can establish a basis

21  to overcome the bar.

22

13

1          **3.      Cause and Prejudice or Actual Innocence**

2          A federal court may not consider the merits of a procedurally defaulted claim

3    unless the petitioner can demonstrate cause for his noncompliance and actual

4    prejudice, or establish that a miscarriage of justice would result from the lack of

5    review.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).  To establish cause, a

6    petitioner must point to some objective factor external to the defense impeded his

7    efforts to comply with the state's procedural rules.  *Dretke v. Haley*, 541 U.S. 386,

8    393-94 (2004).  "[C]ause is an external impediment such as government interference

9    or reasonable unavailability of a claims factual basis."  *Robinson v. Ignacio*, 360 F.3d

10   1044, 1052 (9th Cir. 2004) (citations omitted).  Ignorance of the state's procedural

11   rules or lack of legal training do not constitute legally cognizable "cause" for a

12   petitioner's failure to fairly present a claim.  *Hughes v. Idaho State Board of*

13   *Corrections*, 800 F.2d 905, 908-10 (9th Cir. 1986); *Schneider v. McDaniel*, 674 F.3d

14   1144, 1153 (9th Cir. 2012).  "Prejudice" is actual harm resulting from the

15   constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir.

16   1984); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996).

17         Alternatively, a federal court may review the merits of a procedurally

18   defaulted claim where a petitioner can establish that a "fundamental miscarriage of

19   justice" would otherwise result.  *Schlup v. Delo*, 513 U.S. at 327.  A fundamental

20   miscarriage of justice exists when a constitutional violation resulted in the conviction

21   of one who is actually innocent.  *Id*.

22

14

1          Alvarado argues that his lack of access to a law library and to a "person

2     adequately trained in the law" caused his inability to develop and federalize his

3     claims.     *Supplemental Memorandum*, p. 9.     However, Alvarado's claimed

4     inadequacies and lack of expertise in the legal system do not excuse his procedural

5     defaults of Grounds Three and Five.  *Hughes v. Idaho State Bd. Of Corrections*, 800

6     F.2d 905, 907-09 (9th Cir. 1986).  Additionally, his *pro se* briefs filed here and in the

7     state courts are replete with citation to authority, both state and federal, and

8     undermine any claim that he did not have access to legal materials.  In fact, he

9     successfully exhausted some of his claims, but simply failed to do so on Grounds

10    Three and Five.  As such, he has not presented the sort of external impediment

11    sufficient to support a finding of cause for his failure to properly raise this claim in

12    State court.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (requiring "some

13    objective factor external to the defense" to support a finding of cause).

14          Alvarado also argues that he is actually innocent of aggravated assault.

15    *Separate Memorandum*, pp. 9-10.  In an extraordinary case, where a constitutional

16    violation has probably resulted in the conviction of a person who is actually innocent

17    of the crime, a federal court may grant habeas relief even in the absence of a showing

18    of cause for a procedural default.  *Dretke v. Haley*, 541 U.S. 386, 388-89 (2004).  As

19    discussed below in relation to Alvarado's Ground Six, Alvarado cannot establish that

20    he is not guilty of aggravated assault.  Therefore, the Court recommends the finding

21    that Grounds Three and Five are not subject to review.

22

15

1

**B.     Merits**

2      Under the AEDPA, a federal court "shall not" grant habeas relief with respect

3 to "any claim that was adjudicated on the merits in State court proceedings" unless

4 the state decision was (1) contrary to, or an unreasonable application of, clearly

5 established federal law as determined by the United States Supreme Court; or (2)

6 based on an unreasonable determination of the facts in light of the evidence presented

7 in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120

8 S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1)

9 if it fails to apply the correct controlling authority, or (2) if it applies the controlling

10 authority to a case involving facts "materially indistinguishable" from those in a

11 controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212

12 F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state court decision is

13 contrary to federal law, the court must examine the last reasoned decision of a state

14 court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101

15 (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal

16 law either (1) if it correctly identifies the governing legal principle but applies it to a

17 new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails

18 to extend a clearly established legal principle to a new context in a way that is

19 objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

20              **1.     Ground One**

21      Alvarado's first claim is that his due process and fair trial rights were violated

22 when the trial court improperly responded to a jury question.   Specifically, he

16

1    contends that after the jury submitted a question about the removal of "knowingly"

2    and "intentionally" as mental states applicable to the charge of aggravated assault,

3    the trial court provided a response that was "insufficient and ambiguous to the degree

4    that the jury could not have found beyond a reasonable doubt that Petitioner was

5    guilty of aggravated assault." *Separate Memorandum*, p. 4.

6           Issues regarding jury instructions usually present questions of state law only

7    and are not subject to federal habeas corpus review. *Estelle v. McGuire*, 502 U.S. 62,

8    71–72 (1991).   A challenged jury instruction requires habeas relief only if the

9    instruction by itself so infected the entire trial that the resulting conviction violates

10   due process. *Estelle*, 502 U.S. at 72; *Boyde v. California*, 494 U.S. 370, 378 (1990)

11   (citation omitted).   A federal habeas court must determine whether there is a

12   reasonable likelihood that the jury has applied the challenged instruction in a way

13   that violates the Constitution. *Estelle*, 502 U.S. at 63.   Here, there is no such

14   likelihood.

15          In finding that the trial court's answer was "clear, complete, and legally

16   sound," the Arizona Court of Appeals reasoned as follows:

17                  The jury's first question expressed confusion over differences in
             the trial court's preliminary versus final instructions regarding the
18           assault charge; the court directed the jury to apply the final instructions,
             which were based on the evidence presented at trial.
19
     Ex. A, pp.4-5.
20
            In the petition and the supporting memorandum, Alvarado does not explain
21
     how he believes the Court of Appeals' treatment of this claim constituted an
22

17

1   unreasonable application of federal law.  In fact, the Court of Appeals' conclusion is

2   fully-supported by the note in question.  When the jurors asked about changes in the

3   jury instructions after the trial was completed, the trial court explained:

> 4   The "elements" of assault, as given to you in the beginning of the trial .
>     . . were all-encompassing (i.e., the various ways that an assault could
> 5   be committed).  The "elements" of an assault, as given to you at the end
>     (as final jury instruction #19D.(1)) constitutes the only basis (recklessly
> 6   causing personal injury), if any, by which an assault could have been
>     committed in this case.

7   Ex. H.  Thus, the record reflects that the trial court, after concluding that the evidence

8   presented at trial could not support a finding that Alvarado committed assault either

9   "knowingly" or "intentionally," removed those options from the instructions.  The

10  Court cannot understand why Alvarado believes that the change to the instructions

11  altered the State's burden of proof.  Under A.R.S. § 13-1203(A)(1), the State, in

12  order to obtain a conviction for assault, remained obligated to show that Alvarado

13  acted "recklessly."   A.R.S. § 13-1203(A)(1) (West 2001).  Given these facts, and the

14  lack of any compelling argument by Alvarado, there is no basis to question the

15  Arizona Court of Appeals' decision on this claim.

16            **2.        Grounds Two and Six**

17            Alvarado's next argument is that insufficient evidence was presented to

18  support his conviction and that the State, in violation of *In Re Winship*, 397 U.S. 358

19  (1970), did not prove him guilty of aggravated assault beyond a reasonable doubt.

20  *Separate Memorandum*, pp. 4-5.  The Court of Appeals determined that the evidence

21  at trial showed that Alvarado caused a five-vehicle accident when he failed to avoid a

1  car that was stalled in the roadway.  A witness testified that, prior to the accident,

2  Alvarado had been driving "fast," "recklessly," and "cutting in and out of traffic."

3  Another victim described Alvarado's vehicle as "speeding" and "darting in and out"

4  of traffic. The injuries caused by the accident included cuts, scratches, and nearly-

5  severed ear.  After the crash, testing of blood drawn from Alvarado revealed an

6  alcohol concentration of .149 percent.  Ex. A, p. 2.  These factual findings of the

7  state courts are presumed to be correct and are subject to review only if the findings

8  "resulted in a decision that was based on an unreasonable determination of the facts

9  in light of the evidence presented in the state court proceeding."  28 U.S.C. §

10  2254(d)(2) & (e)(1).  Alvarado has presented nothing that would cause the Court to

11  question the presumed validity of the state courts' factual findings.

12  　　　　Turning next to the Arizona law under which Alvarado was convicted, the

13  assault statute in effect at the time provided that "[a] person commits assault by . . .

14  [i]ntentionally, knowingly, or recklessly causing any physical injury to another

15  person . . . ."  A.R.S. § 13-1203(A)(1) (West 2001).  An assault committed under

16  section 13-1203 could be aggravated if it caused "serious physical injury to another,"

17  or if a "deadly weapon or dangerous instrument" was used.  A.R.S. § 13-1204(A)(1)-

18  (2) (West 2001).  Applying this law to the facts found by the Court of Appeals, it was

19  certainly not unreasonable for the jury or the state courts to find that Alvarado acted

20  recklessly by driving in the condition and manner in which he did, that he caused

21  physical injury, and that his car was a dangerous instrument and/or that the severing

22

1  of an ear constitutes "serious physical injury."  As such, this Court can find no basis

2  for relief on this claim under the standards of 28 U.S.C. § 2254.

3        The foregoing analysis applies with equal force to Alvarado's sixth claim.

4  There, he alleges that he is actually innocent because "there is no conceivable way

5  the Petitioner can be guilty of aggravated assault because the intent element cannot

6  be proved."  Actual innocence means factual innocence, not merely legal

7  insufficiency.  *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997).  Here, the evidence

8  presented at trial was sufficient to allow a reasonable juror to convict Alvarado of

9  aggravated assault under Arizona law and Alvarado has presented no additional

10  evidence that undermines the verdict.  *See Schlup v. Delo*, 513 U.S. 298, 329 (1995).

11  As such, Alvarado's claim of actual innocence is meritless.

12        **3.**    **Ground Four**

13        In Ground Four, Alvarado alleges three instances of ineffective assistance of

14  counsel.  The operative legal standard applicable to these claims is a familiar one,

15  addressed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S.

16  668 (1984).  The standards enunciated there by the Court are applied unless there is

17  other Supreme Court precedent directly on point.  *See Wright v. Van Patten*, 128

18  S.Ct. 743, 746 (2008).    Under *Strickland*, Alvarado must show both deficient

19  performance and prejudice in order to establish that counsel's representation was

20  ineffective.  *Strickland*, 466 U.S. at 687.  Deficient performance is established by a

21  petitioner's showing that counsel's performance fell below an objective standard of

22  reasonableness.  *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 688).  In the

1  context of rejecting a plea offer, the question is "not whether 'counsel's advice [was]

2  right or wrong, but . . . whether that advice was within the range of competence

3  demanded of attorneys in criminal cases.'" *Turner v. Calderon*, 281 F.3d 851, 880

4  (9th Cir. 2002) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

5  "Counsel cannot be required to accurately predict what the jury or court might find,

6  but he can be required to give the defendant the tools he needs to make an intelligent

7  decision." *Id*. at 881.

8        To establish prejudice, the petitioner must show that there is a reasonable

9  probability that, but for counsel's unprofessional errors, the result of the proceeding

10  would have been different.  *Cooper*, 132 S.Ct. at 1384 (citing *Strickland*, 466 U.S. at

11  694).  "In the context of pleas, a defendant must show the outcome of the plea

12  process would have been different with competent advice." *Id*.  When applying these

13  standards to a claim that ineffective assistance led to the improvident rejection of a

14  guilty plea, the petitioner must show "that but for the ineffective advice of counsel

15  there is a reasonable probability that the plea offer would have been presented to the

16  court (i.e., that the defendant would have accepted the plea and the prosecution

17  would not have withdrawn it in light of intervening circumstances), that the court

18  would have accepted its terms, and that the conviction or sentence, or both, under the

19  offer's terms would have been less severe than under the judgment and sentence that

20  in fact were imposed." *Cooper*, 132 S.Ct. at 1386.

21        Federal habeas rules also instruct that, if the state court has already rejected a

22  claim of ineffective assistance of counsel, a federal habeas court may grant relief

21

1    only if it finds the state court's decision was contrary to, or an unreasonable

2    application of the *Strickland* standards.  *See Yarborough v. Gentry*, 540 U.S. 1, 5

3    (2003).  The review of counsel's performance must be "highly deferential" and must

4    adopt counsel's perspective at the time of the challenged decision or conduct, in

5    order to avoid the distorting effects of hindsight.  *Strickland*, 466 U.S. at 689.  There

6    is a strong presumption that counsel's conduct falls within the wide range of

7    reasonable assistance, *id.,* and the Supreme Court had described federal review of a

8    state court's decision on a claim of ineffective assistance of counsel as "doubly

9    deferential."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v.*

10   *Mirzayance*, 556 U.S. 111, 112-113 (2009)).

11          Alvarado's first claim of ineffective assistance alleges that his trial counsel

12   should have objected to the trial court's response to the juror question regarding the

13   elimination of the "knowingly" and "intentionally" options for the mental state

14   required to support a conviction for aggravated assault.  *Separate Memorandum,* pp.

15   6-7.  The substance of this claim, that the trial court's response constituted error, was

16   rejected on direct appeal.  The Court of Appeals found that the court's answer was

17   "clear, complete, and legally sound," and resolved the jury's "confusion over

18   differences in the trial court's preliminary versus final instructions regarding the

19   assault charge" by directing the jury to "apply the final instructions, which were

20   based on the evidence presented at trial."  Ex. A, pp. 4-5.  As discussed above in

21   relation to Ground One, Alvarado's argument fails to present any reason for

22   questioning the propriety of the trial court's instructions or response to the jury

22

1    question regarding the mental state required for his conviction.  Accordingly, the

2    Court recommends this claim be denied because any objection by Alvarado's counsel

3    would have been futile and thus cannot constitute ineffective assistance of counsel.

4    *See, e.g., James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) (finding no prejudice in trial

5    counsel's failure to raise futile objection to jury instruction).

6          Alvarado's second claim of ineffective assistance is that his trial counsel

7    failed to seek suppression under *Miranda v. Arizona*, 384 U.S. 436 (1966), of his

8    admission that he had been drinking prior to the collision.  In rejecting this claim in

9    Alvarado's appeal in his PCR proceedings, the Court of Appeals explained:

10          The only statement Alvarado identifies as involuntary was his
     admission to a police officer that he had drunk "a couple shots of
11   peppermint schnapps" before driving.  Even had that evidence not been
     admitted, however, other evidence still demonstrated Alvarado's BAC
12   within two hours of the accident in question was .149.  Thus, any error
     in the admission of his statement was plainly harmless, and Alvarado
13   therefore has not demonstrated he was prejudiced by his counsel's
     failure to raise a *Miranda* claim, even assuming there was a valid basis
14   for him to do so.

15   Ex. B, p. 4.  Alvarado does not attempt to explain how or why the Court of Appeals'

16   decision could be characterized as contrary to, or an unreasonable application of the

17   *Strickland* standards.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Alvarado

18   simply has not established "a reasonable probability that, but for counsel's

19   unprofessional errors, the result of the proceeding would have been different."

20   *Strickland*, 466 U.S. at 687-94.  The evidence of Alvarado's BAC, to which Alvarado

21   does not object, was more probative of his condition than his admission to drinking.

22   It is therefore recommended that this claim be denied.

1    Alvarado's final claim is that his appellate counsel was ineffective because he

2    filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), thereby failing to

3    properly federalize his claim that that the trial court erred in denying his *motion in*

4    *limine* to preclude evidence of the victim's pregnancy.  *Separate Memorandum*, p. 8.

5    The *Strickland* framework applies to this claim, and to demonstrate prejudice,

6    Alvarado must show a reasonable probability that he would have prevailed on appeal

7    absent counsel's errors.  *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

8    This he cannot do.

9    As Respondents contend, Alvarado was not prejudiced by counsel's alleged

10    failure because he raised the claim himself on appeal, *see* Ex. C (Supplemental

11    Brief), and because the claim is meritless.  The Arizona Court of Appeals, addressing

12    the substantive claim underlying Alvarado's claim of ineffective assistance of

13    counsel, reasonably explained as follows:

14        Finally, Alvarado contends that the trial court erred by denying
his motion in limine and admitting evidence that the passenger of the
15        stalled vehicle had been three months pregnant at the time of the
accident. . . .   Alvarado argues the victim's pregnancy was irrelevant,
16        "[t]here was no complication in the pregnancy nor was there any injury
to the unborn child," and "[a]llowing this information to be introduced
17        was highly prejudicial."   But even assuming the evidence was
irrelevant, it was not unduly prejudicial, and no prejudice resulted.  As
18        Alvarado acknowledges, the jury heard evidence that there was no
harm to the pregnancy or the unborn child, and the trial court
19        specifically questioned the jurors during voir dire to determine they
would not be biased by the fact of the victim's pregnancy.

20
Ex. A, pp. 6-7.  Alvarado does not explain how this claim could have been improved
21
had it been raised by counsel rather than be Alvarado himself.  Moreover, Alvarado
22

24

1   has not identified any clearly established federal law under which this claim could be

2   found meritorious had it been "properly federalized."   Accordingly, this claim is

3   without merit.

4   **IV.**   **RECOMMENDATION**

5         Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

6   District Court, after its independent review, **deny** Alvarado's Petition for Writ of

7   Habeas Corpus (Doc. 1).

8         This Recommendation is not an order that is immediately appealable to the

9   Ninth Circuit Court of Appeals.   Any notice of appeal pursuant to Rule 4(a)(1),

10  Federal Rules of Appellate Procedure, should not be filed until entry of the District

11  Court's judgment.

12        However, the parties shall have fourteen (14) days from the date of service of

13  a copy of this recommendation within which to file specific written objections with

14  the District Court.   *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the

15  Federal Rules of Civil Procedure.   Thereafter, the parties have fourteen (14) days

16  within which to file a response to the objections.   Replies shall not be filed without

17  first obtaining leave to do so from the District Court.   If any objections are filed, this

18  action should be designated case number: **CV 11-0495-TUC-JGZ**.   Failure to timely

19  . . . .

20  . . . .

21

22

25

file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

Dated this 5th day of September, 2013.


Jacqueline M. Rateau
United States Magistrate Judge

26